The Honorable, the Judge of the United States Court of Appeals. Be seated. Before we call this next case, I want to add to my comments earlier that Judge Keenan also was a high school teacher. Mr. Redden? Just for one semester. That's about as long as I was. And I want to say one more thing about Judge Davis. We have these smart law clerks over here that do a lot of work for us. You've seen them coming up here to the law clerk table. Judge Davis was a law clerk for Judge Bernahan, who's back in the left corner of the floor, of the room where we sit, from Maryland a few years back. And I was a law clerk for Judge Field, who's over on the right-hand wall of West Virginia. So we're like heirs to two of the judges here. The last case that we have for the day is Mr. United States v. Mr. Fuertes, etc. And Mr. Vitek is representing, what's the name of your client? All right. And we have a second lawyer who's on the telephone with us, Mr. Montemarano. Good afternoon, Your Honor. Good morning, Your Honor. Good to have you with us, sir. Thank you. I'm Judge King, and I have Judge Keenan and Judge Davis with me. And Mr. Vitek, are you going to argue first? Good morning. May it please the Court, my name is Nicholas Vitek. I represent Herman and Ventura. And for the purposes of this oral argument, I'll also be representing Mr. Fuertes. We raised four issues in our appeal. I'm going to be addressing issues one and three. Issue one was the inclusion of acts of violence by Mr. Ventura in the course of the ongoing issues in this case. And we believe that the Court erred by permitting the government to put on direct evidence of these other acts, which are highly prejudicial, including murder, attempted murder, robbery, attempted robbery, terroristic acts against innocent citizens, which did not relate to the state of mind at issue in this case. Mr. Vitek, this is a sex trafficking conspiracy case, correct? That's correct. The second issue is very much similar to what was the issue in the last case, which is whether or not 18 U.S.C. 1951 sex trafficking is a crime of violence. I guess I would like to start with that because it seems to be the most fresh in everyone's mind. Sex trafficking is categorically not a crime of violence. Judge Davis, you had in the previous panel discussed the fraud and someone who commits fraud cannot have committed an act of violence. I think it is even more clear than that, and I will give you an example. Mr. Fuertes in this case was convicted of committing 18 U.S.C. 1951. He committed no act of violence. His mere prosecution was based on the fact that he was associated, that he had a financial interest in Mr. Ventura's enterprise, in his acts. So here you have a direct case where someone had no acts on themselves, did not act in any violent way, being convicted of this offense. But now hold on a second. You don't mean to suggest to you that a co-conspirator and or an aider and abetter of someone who does commit acts of violence has committed a crime of violence? No, but the statute here is explicit, actually. What it says is that someone who has a financial interest in someone who is committing an offense through fraud, force, or coercion can be convicted. So your point is you can have a financial interest in a fraudulent commission of the offense. That's correct. And as this Court has already mentioned numerous times, what the statute requires is the force by the defendant. The defendant is the one who has to be the one who's using that force. The defendant is the one who has to be using that physical force, which is defined by this Circuit and the Supreme Court, as violent physical force in order to cause injury. Now is this issue preserved in this case? It is preserved in the same way that it was preserved in the last case, in the sense that the trial lawyers in this case made a Rule 29 motion. It was a general motion. And I understand the point that the Court had made before, which is that this is a legal question. But in the sufficiency issue, I think it is important, because the analysis in the Rule 29 in the sufficiency of the evidence is, is there substantial evidence that each element of the offense has been established beyond a reasonable doubt? That's the inquiry in a substantial – I'm sorry, in a Rule 29 motion, and in reviewing whether or not that Rule 29 motion was correct. And here you can never, ever find that the elements of 1851 meet the definition of a crime of violence because it categorically does not meet that definition. So that's why the Rule 29 motion is important. And you're talking about the crime of violence definition in 924? That's correct. So what you've got is a possession of a fire – illegal possession of a firearm. Correct. In connection with a crime of violence. Correct. And you've got to figure out what the crime of violence is or whether there is one by looking at some other stuff. Correct. So you have to evaluate that and whether or not there's sufficient evidence. And there are cases where the – And was this – in this case, was it decided – it was decided there was a crime of violence against your client? Yes. And was it decided by the court or the jury? It was divided by the court. Decided by the court. Yeah, the court's jury instruction said that I instruct you that this is a crime of violence. And you didn't object to that? The appellants did not object to it. That's correct. Now, it's not a waiver because this wasn't a known right that was raised – So it comes up here on plain error. Well, I think – we believe that under Rule 29, you would look at this on de novo. But on plain error, I think it's clearly plain – it's clearly error. I think it's plain error because you look at the cases that talk about plain error. And I think Carthorne is the most direct case on this point. And Carthorne talks about where there is some guidance for the district court to support their opinion. And if there's some guidance that supports the district court's opinion, then that's – the error cannot be said to be plain. Here, there's nothing that the district court could have relied upon to say that this was a crime of violence. There is no other circuit – Well, is there anything that says the contrary? Yes. This court's analysis on how you decide whether or not an offense is a crime of violence. No, I mean, is there a case out there anywhere that says 1951 is not a crime of violence under 924C? No, this appears to be the first time that the government has advanced this theory in a prosecution. Really? I'm aware of no other ones. There's no other – Anywhere in the country? I'm not aware of any. Well, you mean the two cases today? It's the only two I'm aware of. I'm not aware of any other cases that are on appeal that any other court has addressed this position. Now, did the judge say in your case that it was a crime of violence under the force clause or the residual clause? He didn't make an actual finding, Your Honor. What he said was that it is – I instruct you that for this case, count six, 18 U.S., 1951, is a crime of violence. He didn't say whether or not it was within a use of force or whether or not it was in the otherwise clause. In analyzing this, the only logical – You're not saying that the judge shouldn't have made that determination, but you're saying he should have determined it the other way. That it obviously was not a crime of violence. That's what he should have instructed. But if he had made it the other way, he would have granted you judgment of acquittal. Correct. Because you wouldn't have been guilty of the 924 offense, of the possession offense. There's no way he could have been guilty of the 924 offense. Offense if there was no crime of violence. Correct. And as a result of being convicted of it, he got five years extra on top of everything. Correct. Which is obviously a substantial interest to Mr. Ventura. You know, there's a case in the Fourth Circuit, and I think one or two others as well, in which the jury acquitted a defendant of an underlying crime of violence and convicted on a 924C count. And this court said that's okay. That inconsistent jury verdicts have a legitimate pedigree in the federal courts. And if a judge instructs in a way that permits a jury to convict on a 924C count, while at the same time acquitting on the only available underlying crime of violence, the defendant's stuck with that. I don't remember the name of the case. It's about six, seven, eight years ago. You know the case? I do not, Your Honor. Okay. You don't have any trouble with that principle at all, though, do you? I don't. Why wouldn't it apply here? Because what that goes to is that a jury can conclude that on count one, there's some doubt as to whether or not the defendant committed that offense, but can conclude beyond a reasonable doubt that in the other count, the crime of violence, that it did occur. But how can it be a crime of violence if they have a reasonable doubt about whether he committed it? Your Honor, without exactly knowing the case, I'm a little bit hamstrung in being able to defend it. But I do think that in this case, there's really no way that the jury could have concluded on a Rule 29 that the elements were all met here. And if the court were to disagree with me on that, on a plain error, it clearly is error. It's clearly plain. It clearly impacts the substantial rights. And most importantly, it does impact the integrity of the judicial system because there's a man right now in jail for an offense that he categorically did not commit. And I think that is something that should get everyone paused, and we should not be so ready to skip over that because this is a very real issue. This applies to both the defendants here? No, only Mr. Ventura was convicted of the 924C. Ventura, that's your client? That's my client, yes. All right. The second issue, if I can move on, is that the district court erred by including significant evidence of bad conduct by Mr. Ventura, which also Mr. Forretas was associated with. This includes a murder of a man named El Pilon. This includes the attempted murder. This all came under 404B? No, Your Honor. The government's theory was that this was intrinsic evidence for the case. Yes, part of the whole thing. Part of the whole thing. And the district court reviewed that for abuse of discretion, right? For evidentiary rulings? Yes, Your Honor. Yes, Your Honor. But clearly the district court abused its discretion here because in analyzing the evidence that came in, fully half, if not greater than half, of the evidence that was adduced in this trial was focused on the other criminal acts of Mr. Ventura upon which he was not directly charged with, including murder, attempted murder, what I term sort of terroristic attacks on innocent people who had taken in a prostitute. Very, very, very prejudicial. Very, very bad things. But it never actually got to the issue which was relevant for the jury. What was Mr. Ventura's and Mr. Forretas' mens rea? Because the conspiracy count here was to transporting prostitutes across state boundaries or interstate commerce and then either enticing them or coercing them to engage in commercial sex acts in violation of interstate, I'm sorry, across interstate boundaries. So the state of mind here is what was Mr. Forretas' and Mr. Ventura's state of mind and then what was the state of mind of the sex workers? So I think it is appropriate for the sex workers to talk about what they knew, what they saw, and what they heard as it goes to their feeling of coercion. I think that's completely appropriate. And there are multiple cases that talk about that that is appropriate, both in this circuit and others, and they're all within the briefs. But the error here is that there were additional facts about the murder of someone that was not. Well, it wasn't just someone, was it? It was an alleged competitor. And an important fact in this fact was the murder of Al Pilon was that there was the reason that it's so prejudicial is not only is the fact that it came in for, sensibly for truth, despite the fact that it came in through hearsay testimony. The police officer was allowed to testify that one of the witnesses received threats from telephone numbers that were connected to both Mr. Ventura and Mr. Forretas, the appellants in this case. Yet the witness actually was able to testify at Mr. Forretas' sentencing and stated that that actually was not true, that these individuals were not involved in the murder of Al Pilon. So the jurors heard this prejudicial testimony that turned out to actually be false, which is clearly very prejudicial. They heard testimony of the attempted murder of a man named Mr. Avila, where the jury heard that from both the person who committed the attempted murder, supposedly at the behest of Mr. Ventura, taking a shotgun, pointing at his head, pulling the trigger, and only because there was no bullets in it, that he was not able to, quote, blow his head off. And then they heard from Mr. Avila, who also testified to the other side of that, which was having the gun pointed at his head. None of the sex workers were present during any of those things. None of the sex workers talked about that that was something that they knew about or that influenced them or made them decide to engage in the commercial sex acts. It was clearly just to provide a overwhelming jury with how terrible Mr. Ventura was, and so that they would not be focusing on the appropriate thing that they should be focusing on, which was the mens rea of his, was he transporting people? Was he coercing them, enticing them? And the sex workers' mens rea, which is did they feel coerced by these acts? Someone can commit, you know, 10 murders, and if someone doesn't know about it, that cannot be a coercive environment. On the other side, I can claim to have committed 10 murders, even though I have not committed a single one, and if the sex workers feel coerced by that information, that is something that I think is appropriate. But to basically have a parallel prosecution here, which is what occurred here on all these other bad acts, deprived Mr. Ventura and Mr. Fuentes a fair trial. I will reserve the remainder of my time. Thank you. Very good. Mr. Monte Morano, are you still there? Yes, sir. Do you have anything you want to add? Well, I don't want to disturb you. I mean, the first question you posed to Mr. Blanken regarding, well, this is a sex trafficking conspiracy. Well, that's only partially true, Your Honor. The conspiracy concerning sex trafficking was focused only upon one individual, RDF, and that's laid out in our brief. And most respectfully, most of the evidence that Mr. Blanken has been talking about for the last 10 minutes was not anything she was aware of, related in no way, shape, or form to her. That's the only observation I would make, Your Honor. Very good. Thank you. Mr. Roman? Thank you very much, Your Honor. It's a privilege to be back before the Court. I'll address some of the points that Mr. Vitak has addressed in order. The first issue, of course, the conspiracy issue, I would just as a factual matter point out to the Court, unlike in the previous case where the conspiracy that was charged was under 1594, which is within the sex trafficking statute, this was a 371 conspiracy. So Count 1 alleges a violation of Section 371 with basically two prongs, conspiracy to knowingly transport in violation of Section 2421 and conspiracy to persuade, entice, induce, coerce in violation of 2422. With that statute comes an overt act requirement. As this Court is very well aware, under 371, the government has to approve overt acts. The overt acts are listed in the indictment, and they start at page 38 of the Joint Appendix, excuse me, actually page 39 of the Joint Appendix, and run on for a number of pages. This Court observed just a couple of days ago a case called U.S. v. Bejoghli. Do we know what overt acts, if any, they found? They only had to find one. They only had to find one. Do we know which one they found? I don't think the jury – They didn't get a special verdict. Correct. Not a general verdict. That's right. And neither do we have to. We don't know what they did. We don't know, but my point, Your Honor, is as this Court observed in Bejoghli published just two days ago, the scope of relevant evidence at trial is, of course, dictated by the indictment. So the indictment dictates what is relevant at trial. And so when you look at Count 1, the 371 conspiracy, it alleges a number of acts that Mr. Ventura essentially took to protect his business, to further his conspiracy, some of which was to create this reputation in the community, that he's a dangerous man, that he's somebody who might knock off competitors. He's somebody who will threaten the victim prostitutes who work for him. So that's part of his manner and means. That's part of his M.O., is to get word out that I'm a bad guy. I've got guns. You know, he shows off the gun to, I think, Mr. Campos, and says basically, you know, Mr. El Pallone, Mr. Ramirez, better watch out. Right? This is all part of his M.O. So it is implicitly, it is intrinsic. It's not a question of 404B. It is intrinsic to the acts for Mr. Ventura as part of his conspiracy to essentially create an image of himself as a bad guy. Conspiracy to violate how many statutes? Two objects, Your Honor, two different statutes. 2421. 2421? Which is the transportation statute. Yes, sir. And then 2422, which is essentially the enticement statute. Right. Okay. 1591 is not in there anywhere. Not in Count 1. Now, 1591 does show up under Count 6, which is particularly restricted to victim RDF, who is, of course, in the Joint Appendix. Count 7 is the 924C on top of that Count 6, that particular sex trafficking. It pulls through the offense charged in Count 6. That's correct, Your Honor. That's exactly right. And, you know, getting to that issue, sorry, let me just focus on the first issue. As far as the conspiracy goes, we've talked about why the threatened acts of violence against third parties is relevant for purposes of Count 1. It's also just as relevant for purposes of Count 6, the one that we've just been talking about. Before you leave, is there any limitation whatsoever, judicially enforceable limitation, on the government's ability to call something an overt act in a conspiracy prosecution? You know, Your Honor, I would point the court to the Grand Jury Clause of the Constitution. Grand Jury Clause. Well, which is a very important bulwark for freedom. And what's the limitation that I would find in the Grand Jury? A finding of probable cause. So, so long... So, it's done. Your answer is, no, Your Honor, there is no judicially enforceable limitation on what a government prosecutor can include in an indictment, because if the government prosecutor can get the grand jury, or 12 of them, to agree to that particular indictment, it's gone before the jury. Your Honor... Short of a Rule 29. Let me just focus on the facts of a particular case. Obviously, prosecutors make presentations to grand jurors, and sometimes they don't true bill. Often they do. Almost, you know, for the most part, they do. But that is an important sort of part of our system, is this independent grand jury in the Constitution, the system that we've had for several hundred years, right? I mean, that same argument, I think, could have been made 200 years ago. And the question is, what role does the grand jury play in our broader criminal justice system? And, you know, there's a lot of discussion about that. There's no doubt about that. But I'll tell you, under the system that we have right now, that is the bulwark. That is the limitation on executive authority, or, you know, 22, 24 independent citizens of the state of Maryland, in this case, who sat down, listened to testimony from agents, from witnesses, and made a finding of probable cause. Okay, I don't want to take up your time with it, but it's pretty remarkable. Obviously, you know I'm thinking of the Siegel case, or maybe you don't, when, as a district judge, I took my red pen to an indictment, and the case came up here pre-trial, and the indictment came back. And then, when it came back, the member of your office that tried the case decided not to put on all that evidence. I can't speak to that. Which was the right decision, and there was a conviction, et cetera, et cetera, et cetera. Anyway. I can't speak to those facts, but it does go to trial tactics, Your Honor. And certainly, you know, if there are allegations in the indictment that for whatever reason, by the time we get to trial, the prosecutor feels, you know, I can't support this, or I don't think it's a good idea, we don't bring it. And the jury never hears about it. And, you know, many district judges don't even send the indictment back to the pettit jury. And if they do, they... And, frankly, that's, frankly, a questionable election on my part. But, yeah, judge has discretion. And if there's no evidence, very good, you know, I've been in cases where defense lawyers said, you need to redact those portions of the indictment that no one ever testified about. So the concern, and it's a very valid concern... After the government arrested, they're withdrawn or stricken by the court before you go to the jury. You redact it with, you know, black tape. I don't think you would if there was no testimony about it. That's right. And we have no interest. Anyway, yeah, let's move on to the really interesting question about crime of violence. So let's talk about crime of violence. You know, this case is a little different, and the court's very well aware of this. You know, we're up here on 1591, not 1594, as we are in the Naughton case. Unlike in Naughton, and this is sort of interesting, you know, our position, and I think it's quite vigorously advocated here, in Naughton they waived because they said, we agree, conspiracy to commit sex trafficking is a crime of violence. Here there was no waiver. I'll stand here and completely agree with Mr. Vitak. It's not waiver, but it's forfeiture because they never actually objected. And so Judge Quarles instructed... You're saying they forfeited here. Forfeited, that's right. So it's up here on plain error review. So it's here on... Your position is it's here on plain error review. Yes, yes. And what's here on plain error review is the judge's determination... Instruct the jury... That the 1591 offense charged in count... Six. Six. That's right. Is a crime of violence... For the purposes of... As a matter of law. Correct, for the purposes of count seven, which is the 924C. Okay. Sorry to interrupt you, Your Honor, but that's exactly our point. And so, you know, we're up here on plain error review. The first question is... Is it error? Is it error? Is it error? And we've had that... That's the first problem. That's right. And we've had that discussion. The court, I think, is very well aware of why we don't think... Well, it's just a little different than what was happening in the other case, because the other case went to the jury. That's true. So here was an instruction. That's right. Was taken away from the jury. I wouldn't say, you know, it's, of course, the district judge's role. It's a matter of law, and Judge Botts let the jury assess it. In the first case, that's right. In the first case. In this case... In this case, it was tried differently by your office. That's right. By two different judges. That's right. I presume in the same courthouse, at least the same district. Same floor. Well, maybe not the same floor, but the same courthouse. That's right. Look, this is a shifting area of the law. And I'll tell you, I mean, I don't want to belabor the error point. Let's get to plain error, because really that's what's in our view. Let's get to the second prong, which is was it plain? Let's assume error. Are you conceding error? I'm not conceding error, and the court knows why I'm not. But I do want to talk about plain error, because that gets to the question you're on about. You want to plant your feet on the plain prong? Well, I don't want to plant my feet, but I want to emphasize... Well, you can plant your feet anywhere. Well, I just want to emphasize the plain error prong, because I think that might be the easiest way to resolve this case. That's the prong number two. Yes. Yes. And the reason it's not plain is, I will refer to Carthorne, there was no clear language in the statute, 1591, saying that it's not a crime of violence, right? There was no case law at the time. In fact, I mean, I think... But what makes it error? Well, if the court finds, which we don't concede... What would make it error? That because 1591... No, I mean, what case, what decision, either by this court or by the Supreme Court, would make it error? I can't think of one. That's my point. That's why it's not plain, right? I mean, that's exactly... You don't think the camps make this plain? No, because, you know, in this case, and I appreciate the question, you know, in this case, the jury was never instructed on the force clause. They were just told, this is a crime of violence, which means it can qualify under either the force clause of 924C or the residual clause of 924C. The categorical approach applies either way. That's right. That's right. So why isn't it error under a categorical approach? Well, because De Kamp was a force clause case. So you apply a categorical analysis under either the force clause or the residual clause. Exactly. But they're different inquiries, Judge. And I think Your Honor pointed this out in Apricio Soria, right, the en banc decision from a couple years ago. That was all about the force clause, and this Court didn't touch the residual clause decision. But the divisibility analysis is the same. I agree with that. But 1591A is a divisible statute. There's subsection A, B, C, D. 1591A itself arguably is internally divisible because there's two subprongs, but our position is that 1591A as a unit is categorically a crime of violence under 924C's residual clause. That is exactly our argument. That's your position. Yeah, that's our argument. But my point, though, is even if the Court doesn't buy that, I hope you do, but even if you don't buy it, it's not plain error because I can't find a single case where any court has addressed that particular question. In fact, De Kamp ---- So it can't be obvious there. It can't be obvious. Okay, jump off the page. It can't be obvious. I mean, you can't say that Judge Quarles committed a clear error of law when nobody objects on the other side, and he's basically looking at the statute and saying, my God, it's sex trafficking. Of course it's a crime of violence. We're told that this is the first U.S. Attorney's Office that ever tried to push the envelope this far. Well, I respectfully would disagree with that. Is it not true? I'm confident. You know, we've spoken to the Civil Rights Division. You got any other cases? I think this is the first time it's come up on appeal, and I'll just check with the local office. Well, that's what matters. Yeah. How did the three of us end up with this? How did we get so lucky? Well, all the more reason to find that it's not plain error. Maybe avoid the hard question. But here's why it's hard. When you say it never came up on appeal, is that because the jury was correctly instructed and the jury acquitted? I don't know. You know, 1591, just to be clear ---- Why didn't you all get the judges up there to do the same thing? Yeah, well, let me make sure I answer the question, Your Honor. You all didn't coordinate between the two trials? They were at different times. Well, a week apart. Is that right? I think, well, I guess not, and that's right. Let me make sure I address the point, though. 1591 was enacted, Your Honor, in 2000. I mean, it wasn't even on the books until the year 2000. So it's only been 14, 15. Part of Attorney General Gonzalez's push, right? I don't know about that, but it was part of the TVPA, the Trafficking Victim Protection Act. Part of Attorney General Ashcroft's push to get these statutes enacted. That's right. I mean, talking about history, Your Honor, I don't want to get off track here. There was a mention earlier of Judge Winter. You know, I read an opinion of his, U.S. v. Booker. It's actually in our papers from 1981, talking about human trafficking. It was an involuntary servitude case, U.S. v. Booker. Powerful language about the importance of the 13th Amendment in terms of the broader, you know, jurisprudence of this country and the involuntary servitude statutes, of which this one, the sex trafficking statute, in that it's all titled Chapter 77, peonage, involuntary servitude. You know, really, you know, interesting hearing the first argument today. The first sex, excuse me, the first slavery statute in this country was enacted in 1794, criminal forfeiture of the use of slave ships, right? So there is a long tradition in this country of outlawing the trafficking of persons. So just because the human trafficking statute that we're talking about was enacted only in 2000, this is part of our legacy. And again, there's, you know, language in Judge Winter's opinion talking about the climate of fear, you know, when a person who owns slaves essentially takes all of their free will away by, you know, the use of force, the threatened use of force, the cutting off of all options. That's exactly what happened to RDF in this case. That woman had no options. She was beaten by Mr. Ventura, threatened with a firearm, kept in a dark room, you know, by Mr. Fuertes, who was basically the resident landlord. That is the tradition that we're talking about. So it's true. There have not been any cases under 1591 because it's really not that old a statute. We were talking about use of a firearm. That's right. In the commission of a crime of violence. Well, that's what we're talking about. I'm sorry, Your Honor. I was thinking about it specifically with respect to 1591. Now, of course, you know, Section 924C is charged often with respect to drug crimes. But not with respect to sex trafficking. Yeah, and, again, I don't have an answer for you. I can tell you, we talked to the Civil Rights Division. You know, their view was this is a first in terms of a case going up to the Court of Appeals on this particular issue, which only highlights how Judge Quarles could not have plainly erred when he instructed the jury the way he did, which might be, again, the easiest way to resolve the case because we certainly can't find plain error. De Camp had nothing to do with sex trafficking. I don't think, well, I don't know what people think. But nobody thinks of sex trafficking as involving fraud. I mean, I understand why Congress would throw that in there. I agree. But fraud? Or any combination thereof. In an effort to be as comprehensive as possible really arguably undermines the efficacy of the 924C charge. Yeah, I would respectfully disagree with that, Your Honor, because, you know, the statute, the language of the statute, and I appreciate the Court's question, 1591A says, you know, whoever knowingly in or affecting interstate commerce, et cetera, knowing or in reckless disregard of the fact that means of force, threats of force, fraud, coercion, or any combination of such means. So I think the acknowledgment there is that often all of this stuff is mixed in together. And the expert testified to that, right? Dr. Burke, Ms. Burke, in the Naughton trial said it's never just about fraud. There is always a threat of fraud. And I thought you were going to make a sort of typical case kind of argument. But you haven't made that in your brief. Well, you know, we – A typical case of sex trafficking will never involve fraud. Congress put it in there, but nobody really takes it seriously. Well, I don't want to say that because obviously we have to, you know, execute the statute that Congress has written. But I appreciate the question, Your Honor, which is, you know, I talked about the legislative findings earlier, and that's unique. I mean, I'm not familiar with many statutes where Congress has expressly made legislative findings, to which I think this Court owes deference. Those findings were made by the Congress and signed by the President when he signed the bill into law. Well, they did it in the Violence Against Women Act, and that didn't seem to matter too much, frankly. Well, but that was an interstate commerce issue. I mean, here there's no dispute about the scope of Congress's authority to act. And they have made specific legislative findings which says trafficking inherently, even if it involves coercion. I mean, I read – How can we go back and look at that kind of stuff when the statute's clear? The fraud's not unclear or ambiguous. Well – How can we go look at legislative history? They can fix it if they want. It's not legislative history. They could fix it easily. That's right, Your Honor. I don't want to – Amend 924C. I don't want to get caught up in, you know, sort of semantics. I would not say this is legislative history in the way of committee reports or something that's not enacted. I mean, this is enacted law. This is just as much a part of the statute as 1591 itself. And so you have to read provisions of the U.S. Code in harmony with each other. And when Congress is expressly saying trafficking – I want to get my language right. You say findings are a part of the statute? Well, I think it is. It's positive law? Title 22, Section 7101. It's in the U.S. Code. Take that Title 22 to read out the provision of 1591. Not read it out. Read it in harmony with, which is, of course, a basic principle. But you wanted to read it out. I don't think I want to read it out. It says, Trafficking includes all the elements of the crime of forcible rape when it involves the involuntary participation – we've talked about that – of another person in sex acts by means of fraud, force, or coercion. At the very least, it's an indication of congressional intent not to limit the idea that sex trafficking is simply about misdemeanor. That's the thing. How do we get into intent when, you know, you've got to have some ambiguity or something to get to it? Well, that's right. But, you know, again, when you look at the text of the statute, I'm talking really here about 924C. I want to make sure I get my language right again. Maybe that Johnson case will come out and straighten all this out. Maybe. But, you know, I'll tell you, Johnson, the residual clause in 924E is pretty different than the residual clause in 924C. In fact, if you look at Mr. Johnson, the actual defendant, his supplemental reply brief in the Supreme Court, and I would refer the Court to pages 15 and 16 of his reply brief. If they declare that one unconstitutional, I mean, that's going to put the rest of them on a target. I don't think so, Your Honor. I mean, I think even Mr. Johnson himself has said, Section 924C is likewise very different from the residual clause of the ACCA. So he's trying to, of course, say, my case is really narrow, Supreme Court. Don't worry about all the other, you know, provisions. Obviously, we're not going to know until the Supreme Court rules. But, you know, again, if the Court does rule that way, respectfully, we would ask for an opportunity to brief it, if the Court's interested in that, because I do think it's actually quite different. So I've made my case for why I think it's not plain error. I mean, you know, not looking for excuses. How much of the sentence was driven here? It was five years on top. It was just five years on top? Yeah. In the earlier case, it was just five as well, right? I think it was a rendition. Maybe seven. I want to make sure I don't get my facts wrong. I thought it had to be the five. No, no, it was seven in Naughton. Because the jury was – Brandishing. It was an Alene problem. So basically, in this case, Fuertes, the indictment charged brandishing, but the verdict sheet did not. And so we conceded in the district court it's only five, not seven. In Naughton, the verdict sheet found brandishing. So seven. That's where we were on that. I see my time is out, Your Honor. I'm happy to make one last point, or if the court – We appreciate it very much. Thank you very much, Your Honor. I appreciate it. We appreciate your help. Thank you. You owe him in service. You did a full day's work today, Mr. Chairman. Right. Mr. Votar, you get the last word. Your Honor, sort of dovetailing with where Mr. Rahman left off, you know, talking about the instructions or, I'm sorry, the findings of Congress, Congress is presumed to enact statutes knowing that other statutes exist. And Congress could have made this statute apply to 924C by not including the fraud element, not including the reckless mens rea element. And they didn't do that. So to the extent that the court owes deference to the legislative record, I think you have to also look at the fact that they could have included this to be a crime of violence, and they chose not to. With respect to the plain error issue, the plain error is not simply that this court or the Supreme Court has directly ruled on an issue and therefore the lower court made a mistake or made an error. The error standard comes from did the district court err in its analysis based on Supreme Court precedent and this court's rulings? But you don't have a case that shows that this was error, correct? I don't have a case that shows that they're directly on point that under 1851 it is not a crime of violence. But if you look at the camps and you look at Leocal, which is applying the exact same language from 10 years ago, 11 years ago, saying that this cannot qualify as a crime of violence, and if you look at this court's decisions in Garcia and also its decisions in Benginito, those talk about how this court has said that if it has a reckless mens rea, it cannot qualify as a crime of violence. And this statute has a reckless mens rea, so therefore under this court's precedent it cannot qualify as a crime of violence. So under that logic the court should not have found it to be a crime of violence and therefore it committed plain error. With respect to the bad acts, I think it's very important. First of all, the Beaujolais case that just came out, it is a completely different case. In that case the government had selected 50 health care fraud acts and wanted to provide additional health care fraud acts to show that the government didn't just cherry pick particular bad acts, which was going to be a defense of the defendant. All of them basically were the same offense, they had just limited their evidence to the 50 strongest ones as opposed to the 1,000 that existed.  What the government is saying, though, is really what they were trying to do is provide evidence that he's a bad guy. That's what they said. They wanted to provide evidence that he's a bad guy. Well, of course you want to provide evidence he's a bad guy. That's called propensity evidence, and that's not permitted in a case. And what's interesting is in their defense of these bad acts, here before this court, before the district judge, in their briefings, they have not once been able to tie how these bad acts tie to the mens rea at issue. Well, in fairness to the government, when counsel said he's a bad guy, what he meant was he's a bad pimp, and bad in the street sense of the word, meaning don't mess with my women, my agents, or me. Don't interfere with my business. I think that's what the government meant by he's a bad guy. Okay, but it's not actually the inquiry that the jury has to focus on because the inquiry is what did he transport and did he harbor or entice these women to engage in sexual commercial acts. It is not that he's just generally a bad guy. This isn't a RICO case. This isn't a general prostitution enterprise. These are specific offenses upon which the jury has to focus. But a pimp who's willing to kill a rival pimp or see to the death of a rival pimp is furthering his business. Don't you agree? Furthering business in general but not the business that's at issue here. Well, the business at issue is sex trafficking. The conspiracy count is to the transportation of women in interstate commerce and to harboring and enticing sex workers. So it's not just generally sex trafficking as an offense. Thank you, Ron. Thank you very much, sir. Mr. Montebrano, are you still available? Yes, I am, Your Honor. Anything you want to add? The red light's on. I think I have an answer to Judge Davis' question about judicially enforceable limits on what the government can do to them. I think it's very simple, Your Honor. I think it's due process clause. The government has used evidence in this case that they claim involved overt acts in furtherance of the sex trafficking conspiracy, whether or not it applied to RDF. It was information which these prostitutes, the women, who were the subject of the count one conspiracy, didn't know about. And ultimately, evidence about which the government had information was not committed by these defendants. They interviewed the shooting victims. They knew she could not identify Mr. Fuertes. Mr. Fuertes ultimately was acquitted of the murder at trial in the state court. They were permitted to bring in any terroristic evidence that Mr. Bicek referred to in the arson, once again, without any information that was committed by Mr. Fuertes or Mr. Fuertes. I think ultimately, it's simply not right to forbid the government to bring in evidence without establishing at least the same clause that they have to establish in Rule 404, and that is that it's, number one, a bad act, and number two, that it was actually committed by the defendants against whom the evidence was being sought to be produced. Thank you, Your Honor. Thank you, sir. And I want to thank you and Mr. Bicek. You're both court-appointed, and we appreciate your work in this case. We couldn't handle these things without the efforts of the court-appointed lawyers. Thank you very much. We'll come down and greet counsel and adjourn court. Signing off.
judges: Robert B. King, Barbara Milano Keenan, Andre M. Davis